**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KRISTIN GOWER, individually and on behalf of all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 24 C 9346** |
| **ROUNDY'S SUPERMARKETS INC. and ROUNDY'S ILLINOIS, LLC, d/b/a MARIANO'S,** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Kristin Gower, a former produce department manager at defendant Mariano's stores (which are banner stores of defendant Roundy's Supermarkets Inc.), has sued the defendants for unpaid overtime pay under the Fair Labor Standards Act (FLSA) and the Illinois Minimum Wage Law (IMWL). She contends the defendants misclassified her and other produce department managers as exempt from overtime pay under both statutes. Gower has moved under section 16(b) of the FLSA to issue notice of the pendency of this lawsuit to current and former produce department managers employed by defendants at any time from October 2, 2021 through the present.

For the reasons discussed below, the Court grants Gower's motion but denies her request for a reminder notice. The Court also denies the defendants' request for pre-notice discovery.

## Background

### A.    Produce Managers

Mariano's operates forty-four grocery stores in thirty-three cities across Illinois.  It employs "department managers" to work in different departments within its stores: Produce Managers work in the Produce Department, Bakery Managers work in the Bakery Department, Deli Managers work in the Deli Department, and so on.

During the relevant period, the department managers' corporate job descriptions were materially similar.  The descriptions indicated that all department managers had several management and supervisory responsibilities, including that they "[i]nstitute 'best practice' leadership and management principles," "manage[] a cost-effective program; effectively forecast, plan, order and receive product / supplies" "[d]irect / coordinate all [department] production and processing," and "[s]upervise and coach direct reports in the performance of their duties."  *See* Pl.'s Mem., dkt. no. 28, Ex. C. But these job descriptions also included "functional requirements," which specified that department managers must "frequently walk, talk, hear, climb stairs, reach with the hands or arms," and "[o]ccasional[ly] kneel[] or crouch[], lift[] up to 50 lbs., and climb ladders."  *Id.*

Gower asserts that Produce Managers were expected to work a minimum of fifty hours per week.  This is important, as the FLSA requires employers to pay overtime "at a rate not less than one and one-half times the regular rate at which [the employee] is employed" if the employee works for more than forty hours in a workweek.  29 U.S.C. § 207.  But the law contains an exception:  an employer does not have to pay overtime to "any employee employed in a bona fide executive, administrative, or professional

2

capacity." 29 U.S.C. § 213(a)(1). It is undisputed that Mariano's determined that all department managers, including Produce Managers, were exempt across all Mariano's locations. It therefore did not pay Produce Managers for overtime even if they worked more than forty hours a week.

## B.    Other department manager litigation

On April 14, 2020, former Meat Manager David DePyper and former Bakery Manager Kate Milashus filed a lawsuit against Mariano's and Roundy's Supermarkets for violations of the FLSA and the IMWL, seeking unpaid overtime wages. *DePyper v. Roundy's Supermarkets Inc.*, No. 20 C 2317 (N.D. Ill. filed April 14, 2020). They contended the defendants had misclassified them as exempt, making their failure to pay overtime unlawful under both laws. DePyper brought his claim on behalf of himself and similarly situated Meat Managers; Milashus brought her claim on behalf of herself and other similarly situated Bakery Managers. On April 21, 2022, former Deli Manager Sherie Pletsch filed a similar lawsuit against the defendants on behalf of herself and other similarly situated Deli Managers, alleging the same types of violations. *Pletsch v. Roundy's Supermarkets Inc.*, No. 22 C 2084 (N.D. Ill. filed April 21, 2022).

The FLSA allows similarly situated employees to litigate collectively. 29 U.S.C. § 216(b). Employees, however, must opt in to a proposed collective action to do so. *Id.* To facilitate this opt-in procedure, DePyper and Milashus moved to allow sending notice of their suit to potential collective members. Then-presiding Judge Mary Rowland granted the motion on November 9, 2020. *DePyper v. Roundy's Supermarkets Inc.*, 2020 WL 6565225, at *6 (N.D. Ill. Nov. 9, 2020). Pletsch and the defendants stipulated to sending notice in their case on June 14, 2022. *Pletsch v. Roundy's Supermarkets*

*Inc.*, No. 22 C 2084, Dkt. No. 24 (N.D. Ill. June 24, 2022). Those two cases, and this one, were then transferred to the undersigned Judge. The Court recently granted plaintiffs' motion to finally certify two collectives as FLSA collective actions: (1) a twenty-eight-plaintiff collective of Meat Managers and Bakery Managers and (2) a seventy-six-plaintiff collective of Deli Managers and Hot Food Managers. *DePyper v. Roundy's Supermarkets Inc.*, No. 20 C 2317, 2025 WL 2430460, at *17 (N.D. Ill. Aug. 22, 2025).

**C.     The present litigation**

On October 2, 2024, former Produce Manager Kristin Gower filed the present lawsuit against Mariano's and Roundy's Supermarkets, alleging violations of the FLSA and the IMWL and seeking unpaid overtime wages. She contends the defendants misclassified her as exempt, making their failure to pay overtime unlawful under both laws. Gower brought her claim on behalf of herself and similarly situated Produce Managers.

In November 2024, defendants moved to stay the case pending the Seventh Circuit's decision in *Richards v. Eli Lilly & Co.*, a case in which that court was expected to address the standard for notice and certification in FLSA collective actions. On January 22, 2025, Gower moved for notice and conditional certification of the collective under the FLSA. On January 28, 2025, Judge Rowland granted defendants' motion to stay and stayed the case pending a decision in *Richards*. The case was then reassigned to the undersigned judge. In August 2025, the Seventh Circuit issued its decision in *Richards*; the Court lifted the stay shortly thereafter. Gower again moved to issue notice to the proposed collective of current and former Produce Managers who

4

were employed by the defendants from October 2, 2021 (three years before she filed her complaint) to the present.

**Discussion**

**A.    *Richards v. Eli Lilly & Co.***

Section 216 of the FLSA grants employees the right to sue an employer to recover wages not just on behalf of "themselves," but also collectively on behalf of "other employees similarly situated."  29 U.S.C. § 216(b).  "The statutory text authorizing" these "collective actions" is "sparse."  *Richards v. Eli Lilly & Co.*, 149 F.4th 901, 906 (7th Cir. 2025).  Due to "minimal guidance from Congress or the Court," district courts have historically "been left to devise their own standards" in "the management of a collective action."  *Id*.  Most district courts have followed a two-step approach commonly known as "conditional certification" and "decertification."  *Id.* at 907.

In *Richards*, the Seventh Circuit noted that the labels "conditional certification" and "decertification" are "misleading[]."  *Id.*  "[T]he sole consequence of conditional certification is the sending of court-approved written notice to employees"; it "does not produce a legal class or join any parties to the action."  *Id.* (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).  "[O]nce opt-in is complete," the plaintiffs "bear the burden of moving to certify their collective action."  *Id.* at 912.  And to meet that burden, "the plaintiffs must establish their similarity at the certification stage by a preponderance of the evidence."  *Id.*

This case is at the notice stage.  In *Richards*, the Seventh Circuit defined a uniform notice standard:  "[A] plaintiff must first make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated."  *Id.*

at 913. That is, "a plaintiff must produce some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Id.* "A plaintiff's evidence of similarity need not be definitive, but defendants must be permitted to submit rebuttal evidence and, in assessing whether a material dispute exists, courts must consider the extent to which plaintiffs engage with opposing evidence." *Id.* The court expressly rejected that a plaintiff must prove similarity by a preponderance of the evidence to secure notice because such a requirement "is unworkable and inconsistent with" Supreme Court case law. *Id.* at 911. "Once the district court is satisfied that there is at least a material dispute, the decision to issue notice will depend on its assessment of the factual dispute before it." *Id.* at 913.

The district court may proceed with a two-step approach if it "is persuaded that the evidence necessary to resolve a similarity dispute is likely in the hands of yet-to-be-noticed plaintiffs." *Id.* "Alternatively, if the court is confident that a similarity dispute can be resolved by a preponderance of the evidence before notice, it may authorize limited and expedited discovery to make this determination and tailor (or deny) notice accordingly." *Id.* Courts may resolve similarity disputes "swiftly and conclusively before notice" if the case involves certain types of disputes, such as "if a defendant can show that a valid arbitration agreement bars the employee from participating in the action." *Id.* at 914.

## B.   Merits

When evaluating whether a collective shares a similar factual and employment setting, the "operative question" is "whether there is 'an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws.'"

*Haugen v. Roundy's Illinois, LLC*, 552 F. Supp. 3d 806, 808 (N.D. Ill. 2021) (quoting *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 346 (N.D. Ill. 2012) (St. Eve., J.)). "Courts typically consider such factors as location, job duties, supervision, and policies or practices that bind the plaintiffs' claims together." *Id.* (citation omitted); *see also Camilotes*, 286 F.R.D. at 346 (collecting cases). The FLSA only requires plaintiffs to be "similarly situated"—they "need not be identically situated" to litigate as a collective. *Camilotes*, 286 F.R.D. at 346; *see also Russell v. Ill. Bell. Tel. Co.*, 721 F. Supp. 2d 804, 812 (N.D. Ill. 2010) (Kennelly, J.) (collecting cases). Thus the Court will consider the Produce Managers' locations, job duties, supervision, and policies and practices to determine whether Gower has made the required threshold showing.[1]

Gower argues that the Court should allow her to provide notice to the proposed collective because the evidence she cites exceeds the required threshold showing that there is a material factual dispute about whether the proposed collective is similarly situated. Gower cites evidence that shows all Produce Managers were constrained by an upper-level management hierarchy and were expected to work alongside non-exempt hourly workers performing the same duties as the hourly workers. Pl.'s Mem., dkt. no. 28, Exs. A, B, C. Gower also presents testimony from another case that shows that all Mariano's have the same department manager positions, including Produce Managers. Pl.'s Mem., dkt. no. 28, Ex. F, 20:19–22. These department managers are

---

[1] Gower argues that the Court's decision granting final certification of two collectives of other department managers in *DePyper* "could be enough standing alone to clear the *Richards* threshold showing bar for issuance of notice." Pl.'s Supp. Mot., dkt. no. 27, at 9. In support, Gower cites two out-of-circuit district court cases. The Court disagrees that a decision about other department managers is dispositive here. The Court relies, however, on the evidence Gower cites from similar cases and assesses this evidence as it applies to Produce Managers.

subject to the same reporting structure in all Mariano's stores. *Id.* at 21: 7–9. And the defendants do not dispute that all Produce Managers were classified as exempt and were not paid overtime when they worked more than forty hours in any given week. Gower's evidence also reflects that Produce Managers performed manual labor such as breaking down shipments, stocking shelves, and customer service. *Id.* The defendants dispute only whether the manual labor and non-supervisory duties Produce Managers performed are sufficient to support Gower's allegations that they were misclassified as exempt under the FLSA.

The defendants argue that "Gower's only evidence of alleged FLSA misclassification is two paragraphs in her declaration that briefly describe her duties." Defs.' Resp., dkt. no. 34, at 19–20. This is incorrect. As discussed, Gower relies on her own affidavit and an affidavit of another former Produce Manager, Walter Pagor. Pl.'s Mem., dkt. no. 28, Exs. A, B. She also cites the uniform job descriptions of the Produce Manager[2] and four other department managers, internal company policies and procedures, and testimony about the defendants' management structure from similar cases. Pl.'s Mem., dkt. no. 28, Exs. C, G, J, K.

The defendants also contend that Gower "must demonstrate 'that the individuals [she] seek[s] to represent are similarly situated with respect to factors relevant to the exemption analysis,' including showing that the potential plaintiffs 'share[] sufficiently similar duties and levels of discretion and independent judgment so as to make it possible to determine collectively whether defendant classified them improperly.'" Defs.'

---

[2] The defendants incorrectly state that Gower did not attach the Produce Manager job description to her motion; it was attached to both her original and supplemental motion. *See* dkt. nos. 20-4 at 37-39, 28-4 at 37-39.

Resp., dkt. no. 34, at 22 (quoting *Ruiz v. Serco, Inc.*, No. 10 C 394, 2011 WL 7138732, at *4 (W.D. Wis. Aug. 5, 2011)). That is an overstatement of *Ruiz*. The court in that case stated that plaintiffs "*must make a modest factual showing* that the individuals they seek to represent are similarly situated with respect to factors relevant to the exemption analysis." *Ruiz*, 2011 WL 7138732, at *4 (emphasis added). After *Richards*, at the notice stage, Gower must show that there is a material factual dispute on this point. *Richards*, 149 F.4th at 913. She is not required to demonstrate, conclusively or even by a preponderance of the evidence, that all Produce Managers are similarly situated.

Additionally, the defendants argue that Gower fails to make a threshold showing to support the issuance of notice because the existence of lawful corporate policies, practices, training materials and job descriptions does not demonstrate an unlawful practice. Perhaps not, but the ultimate question of liability is not before the Court at this point. Gower's evidence reflects that the Produce Managers shared similar locations, job duties, supervision, and policies and practices. Gower and Pagor's declarations provide factual support for the contention that the Produce Manager position does not qualify as exempt under the FLSA and that persons holding these positions were misclassified as exempt given their actual day-to-day duties.

The defendants contend that Gower's "purported knowledge of other Produce Managers is speculative and unsupported, and thus insufficient to support conditional certification." Defs.' Resp., dkt. no. 34, at 24. In *Richards*, the Seventh Circuit noted that the terms "conditional certification" and "decertification" are misleading. *Richards*, 149 F.4th at 907. Rather, the court stated that a district court may proceed with the two-step approach if it is persuaded that "the evidence necessary to resolve a similarity

dispute is likely in the hands of yet-to-be-noticed plaintiffs." *Id*. at 913. At the first step, the district court will authorize notice if a plaintiff makes a threshold showing that there is a genuine dispute of material fact about the similarity of the proposed collective. *Id.* A plaintiff must then later move for certification. *Id.* At this point, Gower seeks authorization of notice, not certification of the collective. She has provided evidence that gives rise to a genuine factual dispute regarding the issue of misclassification. This is enough to authorize sending notice to other potential collective members. It remains to be seen whether it will be sufficient for certification. But that is not the question before the Court at this point.

The defendants also argue that the declarations they have submitted from fifteen current Produce Managers show that Gower and Pagor's claimed experiences are outliers. Gower responded to the defendants' declarations with supplemental declarations. Gower argues that, at most, the defendants' declarations from current Produce Managers give rise to a factual dispute. The Court agrees.

Additionally, a review of both sides' declarations shows that they do not necessarily contradict each other. For example, the defendants' declarations do not dispute that Produce Managers are constrained by an upper-level management hierarchy. Instead, the declarants state that they are "responsible for managing inventory within" the produce department and use "independent judgment and experience to do so efficiently and in a profitable manner." *See, e.g.,* Defs.' Resp., dkt. no. 34, Ex. B at ¶ 8. Gower's supplemental affidavit states that "Mariano's policy was that I could adjust the order up or down up to 20% if I thought it was necessary without approval, but more than that required approval from the Store Director." Pl.'s Reply,

dkt. no. 36, Ex. A at ¶ 4(b).  These statements are not necessarily inconsistent.

Another salient example comes from the discussion by defendants' declarants regarding their involvement in scheduling.  The declarants state that "I am in charge of managing my department's labor hours, and I schedule Team Members accordingly." *See, e.g.,* Defs.' Resp., dkt. no. 34, Ex. B,  ¶ 12.  Gower's supplemental affidavit states, "Regarding scheduling, I was given a labor budget by the Store Director that I was required to stay within . . . .  After the draft was created, I had to submit the draft to the Store Director, who then made cuts before the schedule was final."  Pl.'s Reply, dkt. no. 36, Ex. A at ¶ 4(j).  Again, there is not necessarily an inconsistency here; Gower's statement provides additional detail that purports to explain the statements of the defendants' declarants.

Importantly, the declarations submitted by defendants do not dispute the propositions that all Produce Managers were subject to the same job description, were generally required to work at least fifty hours each week, were classified as exempt from the FLSA, and performed labor such as breaking down shipments, stocking shelves and customer service.  Ultimately, the declarations provided by defendants show that there are disputes about material facts, but they do not conclusively establish that Produce Managers are not similarly situated.

In sum, the Court concludes that Gower has made a threshold showing that there is a material factual dispute regarding the similarity of the members of her proposed collective.  And the evidence necessary to resolve this dispute is likely in the hands of the yet-to-be-noticed Produce Managers.  *Cf. Richards,* 149 F.4th at 914 (district courts have the authority to "recognize [] similarity disputes that can [] be resolved swiftly and

conclusively before notice").  The Court concludes that notice should be issued to all current or former employees of defendants who held the position of Produce Manager (including Manager of Produce, Bench Produce Manager, or other similar positions variously titled) and were paid as salaried overtime exempt on a pay date on or after October 2, 2021.

## C.    Notice process

Gower proposes using the same notice and consent language and process used in *Pletsch*, except that she also requests authorization to send a reminder notice halfway through the sixty-day notification period.  The defendants do not respond to Gower's proposal.

The Court overrules Gower's request to send a reminder notice.  Absent any evidence that notice via first-class mail, email and text message is ineffective, this additional notice is unnecessary.  *See Binnissia v. ABM Indus., Inc.*, No. 13 C 1230, 2014 WL 793111, *6 (N.D. Ill. Feb. 26, 2014).

The Court authorizes the following process for issuance of notice.

The notice process set forth below will require the defendants to disclose current and former employees' personal identifying information, including home address, personal phone number, and personal email address.  During discovery, the defendants may also disclose information that reveals trade secrets and personnel or employment records of individuals who are not parties to the case.  Thus the Court determines that good cause exists for entry of a confidentiality order.  *Bond v. Utreras*, 585 F.3d 1061, 1067 (7th Cir. 2009).  The parties shall submit a proposed agreed confidentiality order on or before December 17, 2025.

By January 9, 2026, the defendants shall produce the names, dates of employment, current or most recent work locations, last known addresses, last known personal email addresses, corporate email addresses, and last known cellular telephone numbers of the following:  any current or former employee of defendants who held the position of Produce Manager (including Manager of Produce, Bench Produce Manager, or other similar positions variously titled) and was paid by the defendants as salaried overtime exempt on a pay date on or after October 2, 2021.

The defendants shall provide this employee information in an electronic form that can be used by the plaintiff in delivering the Court-approved notice.  If the information is not stored electronically, the defendants shall provide it in written form.  Plaintiff's counsel may use this list only to facilitate the issuance of notice.  Plaintiff's counsel may not share the information provided with anyone other than the third-party administrator or use the information provided for any other purpose.

After receiving the employee information, a third-party administrator (selected and retained by the plaintiff at her initial expense, without prejudice to seeking reimbursement) shall run the employee information through the U.S. Postal Service's National Change of Address database, and perform skip tracing searches using public and proprietary electronic resources which collect data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed), and credit bureaus.

The Court authorizes sending the notice and consent form submitted as exhibit 19 to plaintiff's supplemental motion, *see* dkt. no. 28-19, to those individuals whose names are provided as required above.  Within seven days of receiving the employee

13

information described above, or January 16, 2026, whichever is later, the third-party administrator shall send such notice and consent forms by first class mail (with enclosed self-addressed, stamped return envelope) and by email. The envelope for mailings shall include the third-party administrator's mailing address and shall state "Court-Authorized Notice of Rights Included" and the lawsuit's caption and case number. The subject line for email distribution of notice shall state "Court-Authorized Notice of Rights" and the lawsuit's caption and case number, and the body of the email will contain a unique hyperlink to the notice maintained on the third-party administrator's website.

The Court authorizes sending notices via text message if, for a particular individual, both email notices and mailed notices are returned undeliverable. If notices will be sent via text message, the parties shall submit to the Court agreed text message language at least seven days before the text messages will be sent.

By January 26, 2026, plaintiff shall file a status report indicating the date on which the notice and consent forms were initially mailed.

The individuals who receive notice shall have sixty days from the date the notice is mailed to join this action by submitting a consent form to the third-party administrator for filing in the action. A consent form that is postmarked on or before the deadline will be considered timely. A consent form received by mail without postmarks will be considered timely if received within five business days of the deadline.

Consent forms shall be submitted to the third-party administrator, which will promptly provide all consent forms to plaintiff's counsel for filing with the Court. Consent forms may be submitted to the third-party administrator by mail, email, facsimile, or by submissions of electronically signed consent forms directly via an online portal

maintained by the third-party administrator on its case-specific notice website.

By March 27, 2026, plaintiff's counsel shall file the consent forms for the opt-in plaintiffs.

By April 16, 2026, the parties shall file a joint status report.

**Conclusion**

For the reasons stated above, the Court grants Gower's motion to issue notice under 29 U.S.C. § 216(b) [dkt. no. 27] but denies her request to send a reminder notice. Accordingly, the defendants' request for pre-notice discovery is denied.

A telephonic status hearing is set for February 2, 2025 at 9:00 a.m., using call-in number 650-479-3207, access code 2305-916-8729.

Date:  December 10, 2025

_____
MATTHEW F. KENNELLY
United States District Judge